653 A.2d 697

Beth GADON, Appellant,

v.

The CHASE MANHATTAN BANK, (USA).

Lawrence and Deborah GILBERT and
David A. Thompkins, Appellants,

v.

GREENWOOD TRUST COMPANY.

Superior Court of Pennsylvania.

Argued Oct. 21, 1993.

Decided Jan. 5, 1995.

Michael D. Donovan, Haverford, for appellants.

Jeffrey S. Saltz, Philadelphia, for appellees.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

In this consolidated appeal Beth Gadon, Lawrence and Deborah Gilbert, and David A. Thompkins, who are plaintiffs in separate actions, appeal from the March 11, 1993 orders entered in both cases. In those orders, the trial court dismissed their complaints. Appellants instituted their separate actions against The Chase Manhattan Bank, (USA)[1], and Greenwood Trust Company, both state-chartered banks in Delaware (appellees). In their respective actions, appellants claimed that appellees illegally overcharged them with late charges and contingent fees on their unpaid credit card balances in violation of Pennsylvania usury laws. Appellees filed preliminary objections, asserting that the complaints failed to set forth claims upon which relief could be granted since the relevant state law was preempted by federal law. The trial court agreed and dismissed the complaints. We reverse.

The allegations in the complaint are as follows. Appellants are holders of Discover and Visa credit cards issued by appellees. After accepting and using the credit cards in Pennsylvania, appellants were late in paying the monthly minimum installments on the accounts. As a result, their succeeding monthly billing charges reflected the imposition of "late charges." These late charges were added to the unpaid balance reflected on appellants' monthly billing statements and interest then was charged on the resulting balance.

1. We note that The Chase Manhattan Bank formerly was a federally chartered banking association until June 21, 1990.

Appellees are state-chartered banks in Delaware. Appellees issue their credit cards pursuant to cardmember agreements to customers nationwide, including residents of Pennsylvania. Appellees impose separate late payment charges if the minimum payment due is not paid within twenty days after the payment due date in any month. According to the cardmember agreements, failure to pay the minimum payment by the monthly due date puts the customer in default and triggers the late payment contingent charge. Appellees, however, do not include the late charges in the disclosure of annual percentage rate in their cardmember agreements, monthly billing statements, application forms or national advertising. In fact, appellees separately identify the late payment charge in the cardmember agreements and separately identify finance charges and late charges. The payment of a late charge is not a condition for the extension of further credit by appellees, and does not, in itself, affect appellees' decision to further extend credit to individual cardholders.

Appellants alleged that the penalty fees imposed constitute interest charges exceeding the limits delineated by Pennsylvania statutory and common law (set forth, *inter alia,* in the Pennsylvania Goods and Services Installment Sales Act, 69 P.S. § 1101 *et seq.,* the Pennsylvania Banking Code of 1965, 7 P.S. § 101 *et seq.,* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.*). They further claim that such contingent and penalty charges are not included within "interest" as that term is defined in section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d ("DIDA") or under federal common law. Hence, appellants claim there is authority for finding that late penalties and contingent fees are included in calculating the overall interest charged to a loan under limits set by state law but are not preempted by DIDA, or the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*

Appellees contend we should apply a federal circuit court opinion, followed by every other state court which has addressed this issue, wherein the court found that federal law regulating the maximum interest that can be charged by

banks permitted them to charge the highest rate they are allowed to charge by the law in the state in which they are located. This holding was premised on the court's finding that Congress intended for federal banking law to preempt state usury laws. *See Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

■■■ We disagree. We conclude that we are bound by our recent *en banc* decision in which we addressed essentially the same issues which are raised in the instant case. *See Mazaika v. Bank One, Columbus, N.A.,* 439 Pa.Super. 95, 653 A.2d 640 (1994). Therein, we found that reliance on *Greenwood Trust Co. v. Massachusetts, supra,* was misplaced since Congress defined the term "interest" narrowly in section 85 of the National Bank Act, 12 U.S.C. § 85, and therefore, did not express an unequivocal intent to occupy the field generally so as to preempt state usury laws altogether. The definition of interest used when addressing federal preemption must be that described in federal law and not state law since Congress cannot delegate the federal preemptive legislative power over the states to one state. Although *Mazaika* involved national banks, its holding that interest is defined narrowly applies by analogy to appellees as state banks in this case since the definition of the highest interest allowable set forth in both section 85 of the National Bank Act, 12 U.S.C. § 85, and DIDA virtually is identical. Section 1831d of DIDA, in pertinent part, provides:

> In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates ... such State bank or such insured branch of a foreign bank may ... take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign

bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.[2]

Yet, neither statute undertakes to include the contingent contractual late penalty charges at issue within its numerical definition of "interest." Therefore, our holding in *Mazaika* that state usury law is preempted only to the extent of the narrow definition of interest is controlling.

Judgment reversed. Case remanded. Jurisdiction relinquished.

BECK, J. files a Concurring Opinion.

BECK, Judge, concurring.

I join the majority opinion. I write separately only to make clear the analogy by which *Mazaika v. Bank One, Columbus, N.A.*, 439 Pa.Super. 95, 653 A.2d 640 (No. 0231 Philadelphia 1993, filed December 14, 1994) (en banc) applies to this case.

In *Mazaika*, the defendants were national banks, and as such were governed by the National Bank Act, 12 U.S.C. § 85 ("NBA"). The NBA authorizes the exportation of the national bank's home state "interest" to other states such as Pennsylvania. In our decision in *Mazaika* we held, however, that federal law—the NBA—did not preempt all state consumer protection and usury laws limiting the charging of penalties and late fees. Instead, the term "interest" as used in the NBA means the percentage *rate of interest* charged to the loan and nothing more, notwithstanding any broader meaning the national bank's home state may allow. *Mazaika, supra* at 101, 653 A.2d at 646.

**2.** 12 U.S.C. § 85, in pertinent part, similarly provides:

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more....

In this case, the defendants are federally insured state chartered institutions, and as such are governed by the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d ("DIDA"). The usage of the term "interest" in this federal statute is the same as in the NBA. By analogy to our preemption analysis in *Mazaika*, then, DIDA's exportation authority preempts Pennsylvania's definition of "interest" only narrowly. Notwithstanding the existence of broader home state definitions of "interest," Pennsylvania's laws on penalties and late charges still control these banks when they do business in Pennsylvania.

I therefore would reverse the lower court's decision to the contrary.